UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SYLVESTER NEAL, III, | ) | |
| Petitioner, | ) | |
| v. | ) | Nos. 3:25-CV-283-KAC-DCP<br>3:23-CR-25-KAC-DCP-5 |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Sylvester Neal filed a pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1].[1] United States District Judge Katherine A. Crytzer referred this case to the undersigned for factual findings and a recommended disposition on Petitioner's claim that he timely asked his former counsel, Attorney Forrest Wallace, to file a notice of appeal on his behalf [Doc. 6 pp. 1, 4]. The parties appeared before the undersigned for an evidentiary hearing on December 1, 2025. Assistant United States Attorney Samuel R. Fitzpatrick appeared on behalf of the Government. Attorney Gerald L. Gulley, Jr., appeared on behalf of Petitioner, who was also present. For the reasons set forth herein, the undersigned **RECOMMENDS** that Petitioner's claim that he received the ineffective assistance of counsel [Doc. 1] should be **DENIED**.

[1] Unless otherwise indicated, all citations to the record are found on the docket of case number 3:25-cv-283.

## I. BACKGROUND

On February 28, 2023, Petitioner was charged along with four named codefendants and unnamed others with conspiring to possess and distribute fentanyl and methamphetamine (Count One) and with possession of a firearm in furtherance of drug trafficking (Count Two) [No. 3:23-CR-25, Doc. 30 pp. 1–2]. On March 7, 2023, Petitioner appeared before the Court for his initial appearance and arraignment, at which time the undersigned appointed Attorney Forrest Wallace to represent Defendant Neal [No. 3:23-CR-25, Doc. 37]. A Superseding Indictment filed on April 5, 2023, added heroin to the drugs allegedly trafficked in the conspiracy charged in Count One, substantive counts of aiding and abetting the possession of 400 grams or more of fentanyl (Count Two)[2] and 50 grams or more of methamphetamine (Count Three) with intent to distribute, and a charge of being a felon in possession of a firearm (Count Eight) [No. 3:23-CR-25, Doc. 53 pp. 1–2, 4].

On April 10, 2024, Petitioner and Attorney Wallace signed a Plea Agreement, whereby Petitioner agreed to plead guilty to Count One, conspiracy to distribute and to possess with intent to distribute 400 grams or more of fentanyl and 50 grams or more of methamphetamine, and the Government agreed to dismiss the remaining counts [No. 3:23-CR-25, Doc. 138 ¶¶ 1–2]. The parties also agreed to a sentence of 120 months of incarceration [*Id.* ¶ 7(a)]. Paragraph 11 of the Plea Agreement provides, in relevant part, as follows:

> 11. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offenses committed,

---

[2] Defendant's charge of possessing a firearm in furtherance of drug trafficking, formerly Count Two, became Count Four in the Superseding Indictment [No. 3:23-CR-25, Doc. 53 pp. 2–3].

> the defendant voluntarily, knowingly, and intentionally agrees to the following:
>
> a) The defendant will not file a direct appeal of the defendant's conviction or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.
>
> b) The defendant will not file any motions or pleadings under 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

[*Id.* ¶ 11(a)–(b)].

On April 17, 2024, Petitioner entered a guilty plea to a portion of Count One[3] [No. 3:23-CR-25, Doc. 148, Minutes].[4] At his change of plea hearing, Petitioner affirmed that he understood that his plea agreement contains provisions that waive his right to a direct appeal with the exception of appealing a sentence above the guideline range or above any mandatory minimum sentence, whichever is greater [No. 3:23-CR-25, Doc. 251 pp. 10–11].

On September 13, 2024, Defendant filed notice of no objection to the Presentence Investigation Report ("PSR"), which calculated Petitioner's sentencing guidelines as 108 to 135 months [No. 3:23-CR-25, Doc. 174 SEALED ¶ 97; Doc. 196]. The offense to which Defendant entered a guilty plea carries a mandatory minimum sentence of ten years up to life [No. 3:23-CR-

---

[3] Defendant entered a guilty plea to conspiring to distribute and possess with intent to distribute fentanyl and methamphetamine but not heroin [*See* Doc. 244 p. 5].

[4] "Upon conviction, the defendant orally moved to withdraw his motion to suppress [R. 81] and objection to the R&R [R. 114] [and t]he Court granted the motion" [No. 3:23-CR-25, Doc. 148 p. 1].

25, Doc. 174 ¶ 96]. At his sentencing hearing on September 27, 2024, the District Judge found Defendant's restricted guideline range to be 120 to 135 months [No. 3:23-CR-25, Doc. 244, Transcript, p. 7]. The District Judge accepted and imposed the parties' agreed sentence of 120 months of imprisonment [*Id.* at 19–21]. Defendant raised no objection to the sentence at the sentencing hearing [*Id.* at 24]. The District Judge advised Defendant of his right to appeal, observing that his plea agreement waives some of his rights in that regard [*Id.* at 24–25]. The Court entered a Judgment of conviction, reflecting a sentence of 120 months of imprisonment [Doc. 215 p. 1]. Defendant did not file a direct appeal.

On June 17, 2025, Petitioner filed a motion pursuant to 18 U.S.C. § 2255 [Doc. 1]. Defendant argues that defense counsel Mr. Wallace "rendered deficient performance when he failed to file a notice of appeal after sentencing" [*Id.* at 4]. Petitioner asserts that "[a]fter sentencing[, he] requested counsel to file a notice of appeal" and that counsel "replied that an appeal would not make that much of a difference in your case" [*Id.*]. Defendant contends that "counsel has a duty not only to consult with a defendant about whether to file an appeal[,] but also [to] file a notice of appeal once a defendant requests a notice of appeal to be filed, even if there is a plea agreement[,] which includes a waiver of certain appellate rights" [*Id.*]. In his attached supporting memorandum, Petitioner states that "[a]fter the sentencing, Petitioner had instructed counsel to file a notice of appeal" [*Id.* at 13]. He states that counsel "replied that there wasn't much, if anything[,] to appeal" and "did not file a notice of appeal as requested by Petitioner" [*Id.* at 13–14]. He further alleges that counsel could not conclude that Petitioner had no basis to appeal without first reviewing the transcripts of Petitioner's change of plea hearing and sentencing hearing, which he did not do [*Id.* at 15]. Petitioner requests an evidentiary hearing and the appointment of counsel to represent him at that hearing [*Id.* at 16].

The Government responded in opposition to Petitioner's motion, arguing that he fails to establish that he timely directed counsel to file a direct appeal [Doc. 4]. It asserts that Petitioner fails to carry his burden of demonstrating that "he specifically instructed his attorney to file an appeal within the time period for doing so" [*Id*. at 7]. It contends that Petitioner's failure to repeat his instruction to file an appeal after counsel stated "there wasn't much, if anything, to appeal" raises doubts as to Petitioner's desire to bring an appeal [*Id*. at 6]. The Government asks the Court to either dismiss Petitioner's claim of ineffective assistance of counsel or to hold an evidentiary hearing to determine if he asked counsel to file an appeal and did so timely [*Id*.].

In reply, Petitioner argues that an evidentiary hearing is necessary "to make a credibility determination as to whether counsel rendered per se deficient performance when he failed to file a notice of appeal at Petitioner's request" [Doc. 5 p. 1].

On September 10, 2025, District Judge Crytzer referred Defendant's ineffective assistance of counsel claim to the undersigned for an evidentiary hearing, proposed findings of fact, and a recommended disposition [Doc. 6 p. 1]. The Court also directed the appointment of counsel to represent Petitioner at the hearing [*Id*. at 4]. Subsequently, the undersigned appointed Attorney Gulley to represent Petitioner at the evidentiary hearing [Doc. 7], which the undersigned held on December 1, 2025 [Doc. 12, Minutes].

## II. SUMMARY OF THE TESTIMONY

Petitioner and Attorney Wallace testified during the December 1, 2025 evidentiary hearing as summarized below.

### A. Petitioner's Testimony

Petitioner Sylvester Neal testified that Mr. Wallace was appointed to represent him at his initial appearance and represented him through his sentencing hearing in this case. He said Mr.

Wallace negotiated a plea agreement with an agreed sentence of 120 months. Petitioner said Mr. Wallace was with him at his change of plea hearing. He agreed that Mr. Wallace met with him and reviewed the Presentence Report. Petitioner said that at the conclusion of the sentencing hearing and before he left the courtroom, he told Mr. Wallace that he wanted to appeal his conviction. He said he told Mr. Wallace that he wanted to appeal a second time when he called Mr. Wallace and asked for the transcript of his sentencing hearing and for his docket sheet. He said during that conversation, Mr. Wallace asked if he wanted to appeal, and he told Mr. Wallace that he thought Mr. Wallace had already "put it in." Petitioner said Mr. Wallace replied that "there was no sense in him" filing an appeal because the results would be the same.

Petitioner stated that he and counsel were still in the courtroom following the sentencing hearing when he asked counsel "to put the appeal in." He said after leaving the courtroom, he was transported to the Laurel County Correctional Center. He said that thereafter, he went to Hazelton FCI, a federal penitentiary. Petitioner said while he was at Hazelton, he called Mr. Wallace, asked for the transcript of his sentencing hearing, and again asked about the appeal. Petitioner said he is now at Edgefield FCI, which is where he went after Hazelton. He said when he called Mr. Wallace from Hazelton, he asked Mr. Wallace to get his sentencing transcripts, his plea agreement, and his docket sheet. Petitioner said Mr. Wallace said he could not get those items, but he could show Petitioner's aunt how to get the form so she could obtain them and send them to Petitioner. He said his aunt subsequently sent his docket sheet and his sentencing transcript, which cost $400.

Petitioner said that during his telephone conversation with Mr. Wallace, counsel brought up the issue of filing an appeal and asked if Petitioner wanted him to file an appeal. Petitioner said he told Mr. Wallace that he thought Mr. Wallace had already filed it. Petitioner said that when he told Mr. Wallace that he thought that Mr. Wallace had already filed an appeal, he considered that

"clear enough that he should have put it in already" because he told Mr. Wallace to do that before he left the courtroom.

Petitioner said he called Mr. Wallace a third time to ask for his sentencing transcripts but did not ask whether Mr. Wallace had filed an appeal because he thought that had been done already. He said he assumed Mr. Wallace had filed the appeal because before they parted ways after his sentencing hearing, he said he wanted to appeal, and Mr. Wallace responded there was not any sense in him filing an appeal because it was going to end with the same results. Petitioner stated that he did not learn that Mr. Wallace had not filed an appeal until he got to Edgefield around the end of March or the start of April 2025. He said he asked an individual with some knowledge of the law how he could tell whether an appeal was filed in his case and that person asked how long Petitioner had been in jail and said an appeal should be filed within thirty to forty-five days. Petitioner said he responded that he had been in jail almost a year but had not received any paperwork. Petitioner said he filed his motion for § 2255 relief after he began working on his case again and going to the law library after his GED classes.

In response to questioning to clarify the timeline of the phone calls with Mr. Wallace, Petitioner stated that he called Mr. Wallace in the middle of October 2024, after he was sentenced on September 27, 2024. He said he needed his sentencing transcript to prove to other inmates that he was not working with the police, so he called Mr. Wallace and asked him to send the transcript. Petitioner said he called Mr. Wallace right after he got to Hazelton and his second telephone call to Mr. Wallace occurred that same month. Upon further questioning, Petitioner said he only called Mr. Wallace once requesting his sentencing transcript, and after that, Mr. Wallace spoke with Petitioner's aunt.

On cross-examination, Petitioner acknowledged that he entered a guilty plea in this case and that his plea agreement provided that he would receive a sentence of 120 months. He could not recall whether 120 months was the mandatory minimum sentence for his offense. Petitioner denied any memory of his plea agreement containing an appeal waiver but agreed that it did. He said he could not recall whether he understood at the time he entered the guilty plea that if he received a sentence of 120 months, he would be waiving his right to appeal. Petitioner agreed that he received a sentence of 120 months.

Petitioner said immediately after the sentencing hearing while he was standing beside counsel and while the Judge was still in the courtroom, he told his attorney that he wanted to appeal. He stated that his attorney told him that it made no sense to appeal because he would end up with the same result. Petitioner said after that, he and his attorney parted ways, and he left the courtroom through the back exit.

Petitioner agreed that he called Mr. Wallace in mid-October when he reached Hazelton. After that, Petitioner said he called his aunt and had her call Mr. Wallace. He said when Mr. Wallace returned his aunt's call, Mr. Wallace showed his aunt how to send an email to obtain Petitioner's sentencing transcript. Petitioner said the first federal penitentiary he went to was Hazelton FCI in West Virginia. He said that during the phone call to Mr. Wallace from Hazelton, he told Mr. Wallace that he thought Mr. Wallace had already filed the appeal. Petitioner said that they did not further discuss an appeal during that telephone conversation but, instead, talked about his sentencing hearing transcript. Petitioner said obtaining his sentencing hearing transcript was the most important thing to him at that time because he needed to be safe. Petitioner said the sentencing transcript and docket sheet were what kept you safe in the prison yard and in the compound.

Petitioner confirmed that he made only one telephone call to Mr. Wallace and asked him to contact Petitioner's aunt to show her how to obtain the sentencing hearing transcript. Petitioner said when Mr. Wallace asked him if he wanted counsel to file an appeal, Petitioner thought he made it clear that he wanted Mr. Wallace to file an appeal by saying he thought Mr. Wallace had already done so. Petitioner agreed that he learned in March or April 2025 that no appeal had been filed. Petitioner said one telephone call was his only communication with Mr. Wallace, and he did not send any letters or emails to Mr. Wallace. He said he did not ask his aunt or any other relatives to ask Mr. Wallace to file an appeal because he did not want to keep bugging Mr. Wallace. Petitioner agreed that he told Mr. Wallace, "I thought you already did that," so Mr. Wallace should have already done it or should "get on to doing it."

**B. Attorney Wallace's Testimony**

The Government called Attorney Forrest Wallace, who testified that he has engaged in the private practice of law for sixteen years and that criminal cases make up approximately sixty percent of his practice. He estimated that he has represented hundreds of clients in criminal cases. Mr. Wallace stated that when a client in a criminal case expressly instructs him to file a notice of appeal, his responsibility is to file the notice of appeal, and if he believes the appeal is without merit, he should move to withdraw after first securing the client's appellate rights. He observed that some issues may be waived if an appeal is not timely filed, so a client's request to file an appeal is very important, and he follows that request.

Mr. Wallace stated that he represented Petitioner Neal in a criminal case and that he remembers that case fairly well. He said the Petitioner's case began with a Criminal Complaint and Petitioner was subsequently indicted. He stated Petitioner litigated a suppression motion contesting a search warrant. He said the District Judge had the suppression motion and objections under advisement when the defense withdrew the motion at the change of plea hearing. Mr.

Wallace said he did not recall Petitioner ever asking him to file an appeal. He stated that he took notes at the sentencing hearing but does not recall Petitioner asking him at the sentencing hearing to file notice of appeal. Mr. Wallace remembered discussing the process of getting the sentencing hearing transcript in a telephone call with Petitioner, but he did not recall any discussion of an appeal or prompting any discussion by asking Petitioner if he wanted him to file an appeal. He remembered telling Petitioner that he would have to pay for the sentencing transcript himself or have his family or friends pay for it.

Mr. Wallace said if Petitioner had asked him to file an appeal in mid-October, it likely would have been time-barred. He said if that had occurred, he likely would have filed the notice of appeal and then moved to withdraw in the Sixth Circuit and for other counsel to handle the appeal. He said if Petitioner asked him to file an appeal at counsel table at the end of the sentencing hearing, he would have filed a notice of appeal within fourteen days. He said he had never failed to file a notice of appeal after a client told him to file an appeal.

Mr. Wallace testified that it is his standard practice to give a roadmap of the case to the client regarding the trial and appellate levels. He said this case involved a plea agreement, so he would have discussed the plea agreement with Petitioner paragraph by paragraph in person before they both signed it. He said he would have discussed the change of plea hearing and sentencing with Petitioner. Mr. Wallace said he did not recall the matter of an appeal being a topic of discussion once the plea agreement was signed.

Mr. Wallace identified his handwritten notes from April 15, 2024, from a visit with Petitioner at the jail [Exh. 4]. He said "KCJ" in his notes meant that he spoke with Petitioner at the Knox County jail. Mr. Wallace stated that at the time of this meeting, Petitioner had already executed a plea agreement. Mr. Wallace said his notes reflect that Petitioner called him over the

weekend asking to withdraw his plea agreement and get a better deal or to go to trial. He said this prompted him to meet with Petitioner because withdrawing from a plea agreement is a big deal. He thought this meeting occurred before the change of plea hearing. Mr. Wallace said he had outlined in his notes that all of Petitioner's codefendants had plea agreements, and he noted that when he met with Petitioner, Petitioner told him that he wanted a sentence less than 120 months. He said his notes show that he called AUSA Swafford from the Knox County jail to see if the Government was willing to consider a lesser sentence. Mr. Wallace said his notes reflect that the prosecutor declined saying that a "5K" was the only way to get a sentence below 120 months. Mr. Wallace said he discussed this response with Petitioner, who wanted to continue with the plea agreement that he had executed.

Mr. Wallace identified his handwritten notes from the change of plea hearing on April 17, 2024 [Exh. 5]. He stated that he always meets with his client prior to a change of plea hearing to review the plea agreement again to make sure that the client is prepared for the Court's questions and that there are no issues. He said he met with Petitioner prior to the change of plea hearing, then they attended the change of plea hearing. Mr. Wallace said his notes reflect that immediately after the change of plea hearing, a member of the United States Probation Office interviewed Petitioner for his presentence report. Mr. Wallace said his notes also reflect that at the change of plea hearing, they withdrew the motion to suppress and Petitioner's objections to the Report and Recommendation. Mr. Wallace stated that his notation stating "11(c)(1)(C), 120 months," reflects that Petitioner had a "locked plea," which means the USPO could not increase the sentence with enhancements. He said the real value of the plea agreement to Petitioner was to have the lowest possible sentence locked in so that no potential sentencing enhancements could apply. Mr. Wallace acknowledged that the agreed sentence was the statutory mandatory minimum sentence. Mr.

Wallace did not recall Petitioner ever telling him that he did not want to waive his right to appeal. He said his practice would have been to discuss withdrawing the pending suppression motion with Petitioner, and they did not discuss preserving the suppression issues for appeal.

Mr. Wallace also identified his handwritten notes from Petitioner's sentencing hearing on September 27, 2024 [Exh. 6]. He said while he did not recall Petitioner's guideline range, his notes reflect that Petitioner had a restricted guideline range of 120 to 135 months. Mr. Wallace said Judge Crytzer questioned the parties about why the Court should accept the 120-month sentence when Petitioner had a criminal history category of III and convictions for several assaultive offenses, some of which involved his female partners. Mr. Wallace related that the District Judge ultimately accepted the agreed sentence with additional requirements that Petitioner receive classes in domestic violence and anger management at the Bureau of Prisons. Mr. Wallace affirmed that his notes do not state that Petitioner asked him to file an appeal. He said if Petitioner had asked him to file an appeal as he left the sentencing hearing, he would have filed that for Petitioner.

Mr. Wallace stated that on September 30, 2024, he drafted and sent a final letter to Petitioner stating that his representation of Petitioner had concluded [Exh. 7]. He said he included a copy of Petitioner's Judgment with the letter and a copy of Petitioner's grievances from the local jail where Petitioner was detained. Mr. Wallace stated that he tries to send a copy of the Judgment to the client as soon as possible. He said he also sends a letter to mark the conclusion of the case so no lingering issues remain and then submits his billing information so that he can be paid. He said that if Petitioner had asked him to file a notice of appeal, he would have mentioned that in the final letter.

Mr. Wallace said he recalled Petitioner calling him from prison requesting his sentencing transcript. He said Petitioner needed the transcript for his own personal security. Mr. Wallace said

he explained the process for getting the sentencing transcript to Petitioner. He also recalled one of Petitioner's family members contacting him and he also explained the process to get the sentencing transcript to the family member as well. He did not recall any mention of an appeal during the phone conversation with Petitioner, nor did he recall prompting such a discussion by asking if Petitioner wanted him to file an appeal.

Mr. Wallace identified a letter from him to Petitioner at Hazelton FCI dated October 28, 2024 [Exh. 8]. This letter states that Mr. Wallace is enclosing a copy of the docket sheet and provides information on an outstanding traffic case in Ohio [*Id.*]. Mr. Wallace testified that Petitioner's Presentence Report showed that Petitioner had several pending traffic offenses from other jurisdictions. He recalled making a call to a traffic court in Ohio on Petitioner's behalf. Mr. Wallace said this letter documents his efforts to assist Petitioner with these matters following his conviction and informing Petitioner that he needed to get an Ohio attorney to assist with that offense. Mr. Wallace said the letter does not say anything about an appeal. He said if there had been ongoing litigation, such as an appeal, he would have documented that in his letter. He also pointed out that the letter states that he was enclosing a docket sheet as Petitioner requested. Mr. Wallace said he provides a docket sheet upon request to help his clients protect themselves and so they have this information for their file. He said he did not recall Petitioner emailing or calling or writing to him after the October 28, 2024 letter.

Mr. Wallace testified that in his professional opinion, Petitioner did not have nonfrivolous issues to raise on appeal. He stated that Petitioner had an appeal waiver that only permitted an appeal if the sentence imposed was above the minimum mandatory sentence or above the guidelines. Mr. Wallace stated that Defendant received the statutory minimum sentence. He stated that if Defendant wanted to appeal counsel's performance, he would have filed the notice of appeal

and moved to withdraw as counsel because he would have been a witness. He said he would have filed a notice of appeal if Petitioner requested it, even if he thought the issue the Petitioner wanted to appeal was frivolous. He stated that no court had ever found that he rendered the ineffective assistance of counsel for failing to file a notice of appeal.

On cross-examination, Mr. Wallace testified that this case was Petitioner's first federal case. He agreed generally that the potential punishments in federal cases are very different from those in state cases. He acknowledged that Petitioner may have been surprised about the some of the aspects of his federal charges when they discussed them. He said while Petitioner may have served some time in local jails, he had never served a sentence in a state penitentiary, and this was the most serious case Petitioner had ever faced. Mr. Wallace stated that he and petitioner communicated often and that Petitioner was not reserved about expressing what he wanted.

Mr. Wallace affirmed that he made the handwritten notes [Exh. 6] contemporaneously during the September 27, 2024 sentencing hearing, while Petitioner was seated beside him and the Judge was on the bench. Mr. Wallace said this is why he used many abbreviations. He said he did not go back and add anything to these notes later. He agreed that at the conclusion of the hearing, he placed his notes in Petitioner's file.

Mr. Wallace said he has prosecuted between five and ten appeals to the Sixth Circuit. He agreed that all these appeals occurred after a trial, rather than following a plea agreement. Mr. Wallace stated that he once brought an appeal following a plea agreement, but that appeal was rejected because of the appeal waiver. He said the deadline for filing an appeal in a federal case is fourteen days from the day the Judgment is entered. He did not know whether the timing of the appeal was jurisdictional. Mr. Wallace said he had never filed an *Anders* brief in any of his federal

appellate cases. He acknowledged that he perhaps should have filed an *Anders* brief in one of his appeals.

Mr. Wallace agreed that Petitioner was concerned about his personal security once he got to the Bureau of Prisons ("BOP"). He agreed that he thought Petitioner sought his sentencing transcript to enhance his personal security while at the BOP. He acknowledged that Petitioner planned to show his sentencing transcripts to others in prison to demonstrate that he was not cooperating with law enforcement. He said that clients have told him that they had to produce their plea agreements and plea supplements to other inmates when they arrived at their designated prisons, but he had not heard it called a "paper party" before. He stated that he tried to assist his clients with getting the documents they requested because prisoners are "very compromised." Mr. Wallace agreed that a mention of a "§ 5K" in the presentence report could indicate cooperation with the Government. He recalled sending Petitioner his plea supplement, which is sealed.[5] He said that to his knowledge, Petitioner did not cooperate with the Government. He did not know whether filing an appeal would send a signal to other inmates that a prisoner was not cooperating. He had no recollection of Petitioner asking him to file a notice of appeal so that Petitioner could produce that notice of appeal to other prisoners.

The undersigned heard the parties' arguments and took the matter under advisement.

## III. ANALYSIS

Petitioner argues that defense counsel was ineffective because he did not file a notice of appeal when Petitioner asked him to do so. To obtain relief pursuant to 28 U.S.C. § 2255, a petitioner must demonstrate "'(1) an error of constitutional magnitude; (2) a sentence imposed

---

[5] Later in his testimony, Mr. Wallace stated that he did not recall whether he sent the plea supplement to Petitioner, but if Petitioner had called and asked for his plea supplement, he would have sent it.

outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). He or she "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998). Petitioner has the burden to establish that he is entitled to relief. *See Scott v. United States*, No. 1:23-cv-193, 2024 WL 1660538, at *3 (E.D. Tenn. Apr. 17, 2024) (citing *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985)).

A petitioner alleging ineffective assistance of counsel must satisfy the two-part test from *Strickland v. Washington*, 466 U.S. 668, 687 (1987); *see also, Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Strickland*, 466 U.S. at 606, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy") (internal citation omitted). Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal

proceeding if the error had no effect on the judgment." *Id*. at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).

"[I]t is 'professionally unreasonable' for a lawyer to fail to file an appeal when specifically instructed to do so." *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). An attorney's failure to perfect a direct appeal upon his client's request is a per se Sixth Amendment violation. *Flores-Ortega*, 528 U.S. at 477. To demonstrate that counsel's failure to file a direct appeal constitutes ineffective representation, a petitioner must show either that counsel disregarded his express instruction to file a notice of appeal or failed to consult with him about an appeal. *Id*. at 477–78; *see also United States v. Ford*, No. 5:18-CR-156, 2021 WL 1921017, at *5 (E.D. Ky. Mar. 23, 2021) (discussing the *Flores-Ortega* analysis), *report & recommendation adopted by* 2021 WL 1535363 (E.D. Ky. Apr. 19, 2021). If counsel fails to file a direct appeal upon request, a defendant is entitled to a delayed appeal without having to show any likelihood of success on the merits. *Flores-Ortega*, 528 U.S. at 477; *see Regalado*, 334 F.3d at 525. Thus, prejudice is presumed for counsel's failure to file a direct appeal upon request even when the petitioner's plea agreement contains an appeal waiver. *Rankin v. United States*, No. 25-1211, 2026 WL 27556, at *1 (6th Cir. Jan. 5, 2026) (per curiam) (citing *Garza v. Idaho*, 586 U.S. 232, 237); *Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012) ("[E]ven when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant expressly requests has, as a matter of law, provided ineffective assistance of counsel[.]").

With these principles in mind, the undersigned turns to the allegations in this case and examines whether Petitioner directed counsel to file a notice of appeal and whether counsel had a duty to consult with Petitioner about his desire to file a notice of appeal. Answering both inquiries

in the negative, the undersigned finds Petitioner fails to demonstrate that he received the ineffective assistance of counsel.

### A. Directive to File an Appeal

Petitioner contends that at the conclusion of his sentencing hearing and before leaving the courtroom, he told Mr. Wallace that he wanted to appeal. Petitioner says that Mr. Wallace responded that it would not make sense to file an appeal because Petitioner would get the same result. Petitioner also asserts that he indicated his desire to bring a direct appeal to Mr. Wallace in a telephone call from the penitentiary in mid-October 2024, when he told counsel that he thought counsel had already filed a direct appeal. Petitioner maintains that from this comment, Mr. Wallace should have known that if he had not yet filed a direct appeal, he should do so.

At the evidentiary hearing, Mr. Wallace disputed both assertions. He testified that Petitioner did not ask him to file a direct appeal at the end of the sentencing hearing and if Petitioner had asked him to file an appeal, he would have filed a notice of appeal within fourteen days even if he thought that Petitioner's appeal was frivolous. The undersigned finds this assertion by counsel is entirely plausible as Mr. Wallace is an attorney with sixteen years of experience who has litigated direct appeals before. Moreover, Mr. Wallace produced his handwritten notes from the sentencing hearing, which have no notation that Petitioner requested that he file an appeal [Exh. 6]. Mr. Wallace also produced a letter he sent to Petitioner on September 30, 2024, three days after the sentencing hearing, stating that his representation of Petitioner has concluded and providing a copy of Petitioner's Judgment [Exh. 7]. Mr. Wallace testified that if there had been lingering issues in the case, such as a direct appeal, he would have addressed those issues in the letter.

Mr. Wallace also stated that while Petitioner called him from the penitentiary requesting a copy of his docket sheet and sentencing transcript, they did not discuss a direct appeal during this

conversation. He denied that he asked Petitioner if Petitioner wanted him to file a direct appeal and opined that it was likely too late to file a direct appeal by the time of this phone call. Mr. Wallace produced a copy of a letter to Petitioner dated October 28, 2024, which encloses a copy of Petitioner's docket sheet and provides information relating to an Ohio traffic offense [Doc. 8]. This letter also does not mention a direct appeal. Mr. Wallace testified that if there had been ongoing litigation such as a direct appeal in the case, he would have mentioned it in this letter. Additionally, Petitioner testified that obtaining documents such as his docket sheet and his sentencing transcript to show that he was not cooperating with law enforcement was his top priority in calling Mr. Wallace. This testimony also corroborates Mr. Wallace's testimony about the phone call.

Based upon the testimony and exhibits provided at the evidentiary hearing, the undersigned finds that Petitioner did not ask counsel to file a direct appeal at the conclusion of the sentencing hearing. The undersigned also finds that Petitioner did not direct counsel to file a direct appeal during a telephone call in October 2024.[6] Thus, on the record before the Court, the undersigned finds that Petitioner fails to carry his burden of showing that counsel disregarded his specific direction to file a direct appeal.

---

[6] The undersigned also questions whether a comment that Petitioner thought counsel already filed a direct appeal constitutes an express directive to file an appeal. "Expressing a desire to appeal is not the factual or legal equivalent of specifically instructing counsel to appeal." *United States v. Taylor*, No. 6:07–12, 2008 WL 4829873, at *7 (E.D. Ky. Nov. 5, 2008); *see also Regalado*, 334 F.3d at 525 ("[A]lthough Regalado *expressed her desire* to file an appeal, she did not *specifically instruct* [counsel] to do so.") (emphasis added); *United States v. Hitchcock*, No. 1:08-cr-1-04, 2009 WL 3754394, at *7 (W.D. Mich. Nov. 5, 2009) (the defendant's statement that he "wished to exercise right to appeal" or making his "desire to appeal" known is not the same as specifically instructing that a notice of appeal be filed).

### B. Duty to Consult

Next, the undersigned examines whether Attorney Wallace had a duty to consult with Petitioner about filing an appeal [*See* Doc. 1 p. 3 (referencing counsel's duty to consult with a defendant about whether to file an appeal)].[7] When a petitioner did not expressly direct counsel to file an appeal, the court asks whether counsel advised the petitioner on the advantages and disadvantages of an appeal in order to make "'a reasonable effort to determine the petitioner's wishes.'" *Neill v. United States*, 937 F.3d 671, 676 (6th Cir. 2019) (quoting *Flores-Ortega*, 528 U.S. at 478). "If the attorney did not consult with the petitioner, the court must further inquire whether the attorney had the affirmative duty to consult." *Bolden v. United States*, No. 2:08-CR-30, 2011 WL 6291794, at *12 (E.D. Tenn. Dec. 15, 2011) (citing *Flores-Ortega*, 528 U.S. at 478).

When a defendant does not expressly request that counsel file an appeal, counsel only has a constitutional duty to consult with a defendant about an appeal when there is reason to think "(1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480; *see also Regaldo*, 334 F.3d at 525 (absent explicit instructions to appeal, an attorney is only required to consult with his client about the advantages and disadvantages of an appeal and ascertain the client's wishes). "If consultation occurred, then '[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's *express instructions* with respect to an appeal.'" *Id.* (quoting *Flores-Ortega,* 528 U.S. at 478). However, if counsel failed to consult with his client, then the court must

[7] Other than a brief reference to the legal standard [Doc. 1 p. 3], Petitioner does not frame his argument in terms of counsel's duty to consult with him about whether he wanted to appeal. He does argue, however, that counsel had a duty to review the transcripts of the change of plea hearing and sentencing hearing at the end of the case to determine whether they raised any issues to appeal [*Id.* at 15, 19]. For the sake of completeness, the undersigned examines this issue.

address whether this alone is indicative of deficient performance. *Id.* "Whether or not counsel met his obligation to consult with his client depends on the totality of the circumstances." *Ford*, 2021 WL 1921017, at *5 (citation omitted). Factors to be considered include "whether the conviction follows a trial or guilty plea both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to the judicial proceedings," and also "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Flores-Ortega*, 528 U.S. at 480.

Here, Mr. Wallace testified that his typical practice is to provide his clients with a "roadmap" of how the case will proceed through trial and on appeal. He also said he met with Petitioner in person and reviewed the plea agreement "paragraph by paragraph" before Petitioner signed it. Mr. Wallace stated that after the plea agreement was signed, he did not recall the matter of an appeal coming up again in the case. Mr. Wallace described a point prior to the change of plea hearing, when Petitioner was having second thoughts about the plea agreement. Mr. Wallace stated Petitioner's doubts related to the length of his sentence, rather than the appeal waiver, and Mr. Wallace's notes from his April 15 meeting with Petitioner at the Knox County jail support this testimony. Mr. Wallace said during his meeting with Petitioner, he called the prosecutor on Petitioner's behalf. Mr. Wallace said the prosecutor's response was that a sentence below the mandatory minimum was not a possibility without Defendant providing cooperation, which Defendant declined to do. Mr. Wallace also stated that when he met with Petitioner prior to his change of plea hearing two days later, they discussed withdrawing the pending suppression motion and objections to the Report and Recommendation and did not discuss preserving these issues for appeal. This testimony suggests that Mr. Wallace did not consult with Petitioner about his desire

to appeal following his sentencing hearing, although they did have those discussions earlier in the case.

Nevertheless, the record reveals Mr. Wallace did not have a duty to confer with Defendant about an appeal at the conclusion of the case. First, as the undersigned found above, Petitioner did not tell counsel that he wanted to appeal. And second, counsel would not have reasonably thought that Petitioner wanted to appeal. Petitioner's conviction resulted from a guilty plea. Petitioner's plea agreement contained a waiver of appeal, which eliminated all appeals of his conviction but carved out an exception permitting Petitioner to appeal a sentence above his guideline range or above the mandatory minimum sentence, whichever was greater. [No. 3:23-CR-25, Doc. 138 ¶ 11(a)]. Mr. Wallace explained this appeal waiver to Defendant prior to his change of plea hearing. The District Judge also explained the appeal waiver at the change of plea hearing, and Petitioner affirmed that he understood he was giving up these rights [No. 3:23-CR-25, Doc. 251 pp. 10–11]. As Mr. Wallace explained it at the evidentiary hearing, Petitioner's sentence of 120 months was "locked in" by his plea agreement. Counsel said Petitioner greatly benefitted from this because it meant that the Probation Office could not recommend enhancements based upon the dismissed counts involving Petitioner's possession of a firearm. Mr. Wallace stated that Petitioner received the minimum mandatory sentence, which he described as the lowest possible sentence that Petitioner could receive. Based upon these circumstances, counsel had "no reason to think that a rational defendant would have wanted to appeal." *Rankin*, 2026 WL 27556, at *3 (citing *Flores-Ortega*, 528 U.S. at 480).

In summary, the undersigned finds that Mr. Wallace did not consult with Petitioner about whether he wanted to appeal following the imposition of his sentence. Nevertheless, Petitioner has not demonstrated that he told Mr. Wallace that he wanted to file a notice of appeal or that a rational

defendant in Petitioner's circumstances would have wanted to appeal. Thus, the undersigned finds Mr. Wallace was not deficient in failing to confer with Petitioner about his desire to appeal.

## IV. CONCLUSION

For the reasons discussed herein, the undersigned respectfully **RECOMMENDS** that Petitioner Neal's sole claim in his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [**Doc. 1**] that defense counsel provided the ineffective assistance of counsel by failing to file a notice of appeal be **DENIED**.[8]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[8] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Tchrs*, 829 F.2d 1370, 1373 (6th Cir. 1987).